Bruce Hendrick Smith and I are here. Counsel, are you ready to proceed? Yes, I am. This is Lloyd Bookman, Your Honor. And yes, I am. This is Shannon Chambers, Your Honor. Thank you. Well, Mr. Bookman? Thank you, Your Honor. Your Honor, I'd like to focus my argument on the question of irreparable harm. Yes. And I may spend a couple of minutes talking about the balance of hardships and perhaps a minute or two on the underlying substantive merits. However, I think this panel is uniquely familiar with the substance of these types of cases, and I don't think I'm going to spend much time on that. I'd like to, to the extent I don't use all of my 15 minutes up, I'd like to reserve the balance for a brief rebuttal. All right. We've presented, Your Honors, two theories of irreparable harm. Let me start out by saying that the question of irreparable harm, in connection with this motion, serves two functions. It impacts two of the factors that the court is to consider in evaluating these types of emergency motions. First, it obviously impacts the question of the likelihood of success on the merits of the underlying appeal. Since the hospital's preliminary injunction was denied by the district court, solely on the basis that the district court found that the hospitals had not shown irreparable harm. And secondly, of course, it is an element, we must demonstrate that the hospitals would be irreparably harmed between now and the time that this case could be, that this appeal could be ultimately decided in order to prevail on this emergency motion. We presented two separate theories of irreparable harm. Mr. Brookman, this is Judge Smith. Judge Smith. The standard of review for us in considering what the district court did is what, in this instance? In connection with the emergency motion or in connection with the ultimate appeal, Your Honor? The motion. In connection with the motion, you must conclude that we have a substantial likelihood... What deference do we owe the district judge here? You afford the district judge deference, particularly with respect to factual findings. Okay, and I guess that's really my concern here. Assume based upon orthopedic that you don't need to repeat the underlying issues. But with respect to irreparability of harm, the district court spent a great deal of time, went through a lot of detailed analysis of what the harm would be or would not be, and found that it was either too significant or was contradicted by other evidence. Under the circumstances, what ability do we have to override that? Your Honor, in this instance, particularly with respect to our first, I think, principle theory of irreparable harm that the district court addressed in a simple footnote, the district court got it wrong on the law. Okay, so you're not arguing the facts, you're arguing the law. That's correct, Your Honor. Okay, and what law did the district court get wrong? There is a line of cases that holds that even purely monetary or pecuniary damages can constitute irreparable harm where the federal courts do not have the authority to make the plaintiffs whole by affording retroactive relief. Now, that's the irreparability argument under the 11th Amendment you're talking about, right? That is correct. In this case, it's under the 11th Amendment. In other cases, it happened to be under sovereign immunity. I appreciate that. I want to get back, though, to the harm aspect of it. Okay, well, the harm is simply, we think the harm is self-evident, Your Honors. The state has reduced reimbursement by 5% for certain types of providers, provider services by 1% for certain types of hospital services, and by 10% or through another complex form of payment. We have so little time, I apologize for interrupting, but my understanding is that the district court found that approximately 90% of the hospital inpatient services in the state are provided by contract hospitals that are not subject to the AB 1183 rate reductions, and in addition, those hospitals are contractually obligated to provide Medi-Cal services. The same was also true of 87 federally qualified health centers and 284 rural health clinics. I guess my question would be, is there some kind of a de minimis standard here that comes into play? No, no, Your Honors. The harm is to the hospitals, the hospitals that are subject to these cuts. But the hospitals aren't really what are the intended beneficiaries of Section 30A of the Medicare Act, are they? Your Honor, I would disagree with that. I would say that the beneficiaries clearly are intended beneficiaries of 30A, but the hospitals, when we've got a statute that says rates must be consistent with quality of care. But doesn't that ultimately get, though, to how the beneficiaries, i.e., in this case, the Medi-Cal individual patients are going to be treated? Isn't that the genesis and basis of 30A? I would agree with you that that is a principal thrust of 30A. I would not agree that the hospitals are not parties that are benefited by 30A and health care providers. Suppose, for example, that there was a good possibility that in six months or a year, because this seems to me what the declaration suggests, that the cumulative shortfall will result in closure or denying of services to patients, but that that wouldn't happen for a while. This is a hypothetical. The fact that the hospitals are losing the... Now ought not to make any difference for... Sorry, the phone's ringing, but it's okay. Okay. Whoever's phone that is... It's mine. It's almost done here. I think I can... There it goes. It's gone now. Okay. All right. I'm sorry. My point is supplementary and consistent with the question that Judge Smith asked, and that is there obviously could be a difference, a significant one, between a short-term loss in income for the hospitals and any impact on the patients, which could either not occur at all or could occur considerably later. And the question is why this... We ought to be concerned with the short-term loss of income to the hospitals for purposes of irreparable harm. I mean, I understand your argument that we could be. In other words, that because of the 11th Amendment problem, if it was irreparable harm with regard to this lawsuit, that we could be concerned about it. But should we be concerned about it given the thrust of this case? Your Honor, it's a difficult question to respond to. Let me try it this way. I understand the court understands our 11th Amendment argument. And again, Your Honors, the fact that we are losing money that we can never recover and it can total in the millions of dollars and it will total in the millions of dollars that we'll never be made whole from, that's harm and we'll never be made whole and that's irreparable. I'm sorry, did I cut you off? The hypothetical I was trying to set up assumed that but also assumed that there wasn't going to be an impact on patient services either now or ever. Yeah, I would... Hospitals are in a difficult spot in all of these rape cases. And that's reflected actually in the orthopedic decision that the hospitals will, to the best of their abilities, continue to provide care. And they will... It's part of their mission to provide care. If patients come to emergency rooms, they will get care. So I cannot tell you, Your Honor, that the hospital industry and the hospitals in the state of California between now and the time that the preliminary injunction can be heard are going to be in a position generally to cause a significant access problem. I can't say that. In fact, it's probably not true. So I'm not going to... You know, we're not basing our motion on the notion that the hospitals will stop providing care because of these rape cuts and beneficiaries will go without hospital care. Your standing is based in part on the fact that you're a financial loss. And the original ILC Living Center opinion says that. So we recognize that there is an injury here. But the question is, how does it matter for our current purposes that that injury really isn't an injury that is particularly a concern of this statute, as I understand it? And that's different from the Boren Amendment era, which was covered in the Kansas case, because that provision was directly related at cost to reimbursement. The 830, as it's been interpreted by orthopedic, provides hospitals, I mean, not just beneficiaries. I understand the major thrust of the statute is to protect the beneficiaries, but it also provides hospitals with the ability to be paid at rates that are reasonably related to their costs so they can continue to provide care and take care of patients. Can I go back to what you said a minute ago? I want to be sure I understood you correctly. I had asked a question relating to how the individual beneficiaries are affected. What I understood you to say in answer to your question to Judge Berzon was that you're really not arguing that hospitals are going to close and that individuals are going to be affected. It is that the hospitals alone, hospitals are going to be impacted, and that's all you really need to show, that you're never going to get this money back and under 30A, your interpretation of 30A, that is enough to show irreparable harm. Is that correct? That's largely correct, although I will say, at least as to SHARP, the SHARP Coronado Hospital, there we have a hospital that at least in, not tomorrow, but in a period of time will be forced to terminate some very significant services that will affect beneficiaries. I don't know what the total dollars we're talking about are, but in light of the district court's findings about the number of hospitals, I think you said 90% on the inpatient services and then a bunch of others that are federally qualified, it sounds like it's really a relatively small percentage of the hospitals, even assuming that your theory is correct, would be affected. Do you agree with that? No, Your Honor, because let me explain why. The 90% figure that you were referring to speaks to just inpatient hospital services. It says 90% of the inpatient hospital services are furnished by hospitals under contract. The other 10% of inpatient services are furnished by other hospitals, but actually about half of the hospitals are under contract and half aren't. About half. The other services that are subject to these reimbursement reductions besides the non-contract inpatient services are nursing facility services provided by hospitals which are skilled nursing services which are cut by 5%. As well as sub-acute services provided by hospitals. These are services provided to frail patients who are often on ventilators and comatose and those services are being cut by 5%. Those are completely separate from the inpatient hospital reduction. Any hospital that has a nursing facility is going to lose 5%. Any hospital that has a sub-acute unit is going to lose 5%. There actually aren't that many. Is that right? Nursing facilities, there are several hundred. Sub-acute facilities the count is I don't know the exact count but I would suspect it's less than 100. With regard to the inpatient services, that's only being cut by 1%. Outpatient hospital services are being cut by 1%. Virtually every hospital furnishes outpatient services. So let's take that because that may be the best way to focus the case. The hospitals are losing 1% of what they were getting before so they're losing money. Presumably it may be a lot of money in the aggregate but it's probably not a lot of money in any individual hospital's budget and seems fairly unlikely to affect any provision of services. If that were the only thing in the case would that support irreparable harm? I think technically it would but we probably wouldn't be here with this litigation if that were the only thing in the case. Do you have any case law that backs up your view that 30A was designed to protect hospitals, not underlying beneficiaries? The closest case law that I would have, Your Honor, is orthopedic itself. Okay. I think that's and again that was just a hospital case where the court was just considering the beneficiaries weren't involved they were considering the interests of hospitals and whether the rates were adequate for hospitals. But they were considering it under the SACWIS access provision whose measure of adequacy is the impact on patients. I'm sorry, Your Honor, not just access the court in orthopedic was also focusing on the efficiency, economy and quality of care factors and in fact the case was brought in that case again the hospital said, hey we're not saying there's an access problem we're not telling you we're going to create an access problem but we're saying that for a rate to be consistent with access or for a rate to be consistent with quality that rate has to at least cover cost and that's what the court said in orthopedic from the perspective of the hospital ability to get a rate that's high enough to be consistent with the furnishing of quality care by that facility. Suppose we thought that this was back to Judge Smith's first question the standard of review suppose we thought this was at least a highly debatable question i.e. whether you could base irreparable harm on the hospital's loss of income alone do we then owe deference to the district judge as to that question? You largely owe deference to the district judge as to that question I would agree with you Judge Berzon but the one aspect of the district court's decision that I think would bear reviewing is the district court focused as your questions are focusing on the harm to the patients on the harm to the beneficiaries and did not we think give appropriate consideration to the harm to the facilities again using the Sharp Coronado facility as the principal example the district court was saying the patients could get care elsewhere generally inpatient services aren't going to be cut the patients can find care but the district court did not the harm to the facilities the harm to a Sharp Coronado is going to close important units that's what I was asking you in other words insofar as the district court's view of the relevant measure of harm here was with regard to the beneficiaries rather than the hospitals is that a legal question? that is a legal question do we owe her any deference as to the legal question? no, as to that question you do not your question as to her factual findings but not as to her legal conclusion that the focus ought to be on beneficiaries solely and not on the harm to hospitals just to cut to the chase here if hypothetically if this panel were to disagree with your analysis of orthopedic insofar as the intended beneficiary under 30A does that end your desire not end your desire does that kill your ability to get an injunctive relief here? if you conclude that well I don't know if that's just the intent of 30A that matters the question is are these hospitals being irreparably harmed and do they have an injury first do they have an injury that they're entitled to redress in federal court this panel has concluded that are they harmed by the thing that the state's doing that they're challenging yes we think they are they're losing money is that harm irreparable the 11th amendment bar says it is so whether or not the intended beneficiary of the statute is the beneficiary for the hospital whether or not the panel agrees with my view of orthopedic or not I would still argue that it doesn't end the analysis the hospitals are losing money on a claim that they're entitled to make and the hospitals can't seek redress of that loss and be made whole in federal court without 30A without your construction of orthopedic being correct there's no legal wrong that's occurred here so how could you possibly get injunctive relief I agree with you without 30A we have claims on other provisions you've got contract claims I'm just talking about under 30A if those are not the intended beneficiaries if 30A was not designed to benefit hospitals as well as patients then there's no underlying wrong you don't get to the injunctive relief do you I would disagree with that your honor because you've already decided in orthopedic and in independent living center you've already decided that providers have the ability to raise the adequacy of rates under 30A they have the standing to do it and they have a right of action under the supremacy clause to show that somewhat more conceptually there's lots and lots of case laws saying that economic injury is not irreparable harm and your suggestion based on the Kansas whatever it is case is that that whole set of case law is based only on the ability to recoup the money later and if you can't recoup it later it all goes out the window is that true or is there something more underlying the line of cases about economic injury essentially that economic injury when it's purely economic and doesn't impact other functions of life is not irreparable injury I think it is true that economic harm is normally not irreparable harm because it can be redressed and if it can't be redressed is there any case law you're saying that all the case law and I have not checked this but all the case law that says that economic harm is not irreparable harm is only because it's recoupable and damages later and that's the only reason that's my view your honor and I can cite you to the 9th Circus decision in the Los Angeles Memorial Hospital case which we cited in which the court said again the court found that the potential loss of income wasn't irreparable harm and that it was based on the notion that adequate compensatory or other corrective relief will be available at a later date in the order but what I'm asking you is that is that the only reason why economic harm is not irreparable harm in my view it is your honor and I have not found a case that is to the contrary nor have I seen anything cited in the state's briefing to the contrary can I say that we've read every single irreparable harm case? No how sad for you we've read a lot of them I'll tell you that but no I truly do believe that the notion that economic damage is not normally irreparable harm rests solely on the notion that the plaintiffs could be made whole if it's ultimately found that they were damaged you had said at the beginning that you had two arguments was your second argument going to be to contest her conclusion the district judge's court's conclusion with regard to the impact on the beneficiaries? no no I think we've already discussed sort of the second prong the first prong was the 11th amendment the second prong was the district court I guess it is what you just said your honor maybe I misunderstood you the second prong is that the district court focused on the beneficiaries to the exclusion of the harm to the providers that is the second prong but you're not contesting her conclusions with regard to the beneficiaries that's correct your honor I'm not contesting that the beneficiaries will not likely have access and continue to have access to services at least until we can bring the case to conclusion what? what? what happened? Judge Reinhart? what was that about? nothing it's about anything I heard bells ring bells ring I think that means it's time to hear from the other side good afternoon your honor this is Shannon Chambers yes please proceed your honor I believe that not only did the district court and this panel hit this issue right on the head the fact of the matter is A30A was clearly intended for the beneficiaries the sole issue in this case as portrayed by the appellants is that simply because these hospitals are losing money that there's harm that is not what the standard is under A30A there has to be access issues for the beneficiaries as compared to the general public they have presented no evidence in this case that there are any access issues and Mr. Bookman actually just conceded that fact to read A30A any other way simply does not make any sense and the appellants in this case have offered no arguments and no legal authority that A30A should be read to if a provider is losing money that somehow that is a violation of A30A there's no evidence to support that and to get back to the irreparable harm issue and the reliance on is he losing money because of a violation of A30A well what A30A says is that you have to reimburse providers in a manner that provides efficiency, economy and quality of care all of the evidence in this case including the multiple analysis done by the there's not going to be any access issues that there will still be efficiency, economy and quality of care as required by A30A there's simply no evidence that there is a violation of A30A wait a minute but that's getting to the merits the judge Snyder concluded that there was a likelihood of success on the question of whether there was a violation of A30A so we can't assume that I was asking you assuming there's a violation of A30A and you're you said there's no violation but let's assume there is Snyder found then you go right back to the harm issue and in this case the appellants simply have not established the harm well they've established harm to themselves they haven't established harm in your view and I would dispute the harm that they claim to have upon themselves if you actually look at the rate changes that are set forth in AB1183 and let me just for history's sake go back and give the panel some framework prior to AB1183 there was AB5 which mandated a 10% reduction across the board what AB1183 does is it terminates that 10% reduction and in certain cases it actually raises the rate of reimbursement specifically for the various nursing facilities and subacute facilities prior to AB1183 they were receiving reimbursement at 90% as a result of AB1183 they'll receive reimbursement at 95% so their rates will increase for hospital outpatient services prior to AB1183 they were receiving reimbursement at a rate of 90% as a result of AB1183 they will receive reimbursement at a rate of 99% that is an increase in reimbursement that does not establish harm excuse me didn't AB5 sunset on February 29th so if not for the current AB1123 or whatever it is they'd be back to the original baseline no your honor that's not true specifically and Mr. Bookman brought this up when he began his argument for the non contract hospital inpatient services that 10% reduction is still in effect from July 1st 2008 that is when that 10% reduction started and that is ongoing as of this day and as of the date of this argument I want to go back to the opposite side of the question that I asked Mr. Bookman I asked him whether there was a case that indicated that hospitals per se were beneficiaries of A30A he answered orthopedic so let me ask you the opposite of that are there any cases that you can cite that indicate that hospitals or any entities other than individual users of MediCal services or Medicare services in the case of A30A are covered exclusively by A30A your honor I can't at this time no so basically the only case at least according to Mr. Bookman that deals with this is our own orthopedic case right I assume you disagree with his construction of orthopedic in terms of what the hospitals are intended to be beneficiaries of A30A I do your honor but isn't the whole intended beneficiary notion inconsistent with your baseline position in this whole line of cases which is that there's no 1983 cause of action here because there are intended beneficiaries or adequately intended beneficiaries there's a very fine line here because we have found a cause of action based on the supremacy clause which doesn't appear to depend on there being intended beneficiaries well how I would respond to that question your honor to the best of my ability is how I understood it I think that according to A30A there still has to be some connection to the access issue and there has to be some level of substantiation by even to accept that theory there has to be some level or some evidence where if it's the hospital where they are truly closing down or truly shutting their doors and are unable to provide care according to the standard set forth in A30A except that the orthopedic hospital theory which is procedural doesn't quite get there right in other words it's sort of preliminary to the substantive determination so why shouldn't the hospitals have be able to claim harm with regard to the procedure of orthopedic hospital which I know you don't care for and don't think is right but using that standard why can't the hospitals complain that the requisite cost studies weren't done and therefore they shouldn't be cut well how I would respond to that your honor is that obviously we don't agree with orthopedic but what we would submit to you and as the evidence before this court and before the district court there was thorough analyses that were performed by the department our assumption right now is that there wasn't that's the district court ruling we have to try to keep these two issues separate and we're now talking about the injury and if you're right on the first part we don't have to worry about that but let's just talk about whether there is irreparable injury to the hospital and whether that matters does it matter if the hospital loses money that it will never get back and your answer is well only if it affects access to the patient is that right that's correct your honor and what I would say whether under the statute whether under 838 the injury to the hospital is irrelevant unless it affects access to the patient and your opponent's answer is well they're violating section 838 and we're suffering money damages which cannot ever be collected and therefore we have irreparable injury and isn't that the whole issue on damages well that is the whole issue your honor but I would also submit that in regards to that harm issue I think the evidence and the district court evaluated that evidence that they still could not establish the harm I mean I think that's the core of the issue is they still cannot establish the harm it depends on what you call harm they say harm is the loss of money to which they're entitled and you say harm is the harm to patients that's correct your honor I gather that there's no chance that the state would simply say well we're going to waive our sovereign immunity defense to any back amount of money that might be ordered and let's get this over with no your honor okay aren't you surprised that states wouldn't do oh it's like asking about a habeas case alright so well your honor I would just say that it goes back to our contention of what A30A says and who it's intended to benefit it's intended to benefit the beneficiaries and I think that's the only way you can read that but going back to the harm issue like I said I don't think the evidence in this case that is before this panel that was before the district court it does not establish harm unless the loss of income is harm well and I believe that in your questioning of Mr. Bookman there was a discussion that economic damages are not harm well what about the answer to the question I asked him certainly there are myriad of sentences running around in the second and third and every other reporter in the country that economic damages are not irreparable harm but the question is whether the necessarily accompanying assumption of those sentences is that because you can collect damages or is there some separate reason why economic damages yeah because money doesn't matter who cares about money in this society I mean what other explanation is there of course you can collect damages later so it's not irreparable do you know of any case but I never heard it argued until I just did that economic loss is not harm because it doesn't really matter I mean I don't understand that argument at all of course economic loss is harm so my question is do you know of any case law at all which says that economic injury isn't harm without the accompanying caveat because you can collect it is irreparable harm because you can collect it without the accompanying assumption it's because you can collect it later your honor off the top of my head I can't fight you a case I can only say that to my knowledge that the line of cases simply say that economic damages do not constitute irreparable harm that is why would you think that is why do you think my position on that would be that you can recover the damages later yes ok but what if you can't recover them later because of the 11th amendment well what I would say is that is the constraints of the law I mean that is essentially what the law says ok but it's does the law say that's not harm when you can't recover it later well my position would be that yes the case law says it's not harm because you can't recover it later I don't understand you mean if you can recover it later then it's not harm if you can't recover it later it's also not harm well if you can't recover it later my position would be that to the extent that we're talking about a preliminary injunction that you either didn't succeed on the merits or there was some part of that claim that was found not to be valid no in this instance neither of those things is true the reason they can't recover it or may not be true the reason they can't recover it later is because of the 11th amendment because you won't waive it well what I would also say your your position on the medicaid act it's my understanding that the medicaid act does not recognize this type of harm as damages or harm but what about the 8th circuit Kansas case which seem to say otherwise well your honor my position on that Kansas case would be that that specifically dealt with the boron amendment and in that case the agency in that case did not conduct the analysis that was required under boron and that is why the Kansas case was found the way it was and I would also state in regard to that Kansas case that even though the court found a violation of the boron amendment which has since been repealed they still took the extra step to determine whether there was actual harm so I would distinguish that case from the facts that we have in this present case because we're dealing with A30A we're not dealing with the boron amendment well okay I think we've heard the arguments I think they're really very clear to the court and I doubt that there was any time left for the appellant but we could give you one minute if you'd like your honor I don't think I need my minute I think the issues have been very well discussed alright well thank you both very much to my colleagues we'll put in a conference call again in a minute okay we just call the same number? I don't know what number we called before no no we'll put in a conference call to the two of you alright fair enough thanks bye thank you
judges: Reinhardt, Berzon, Smith M